OPINION OF THE COURT

Per Curiam.

Judgment of conviction rendered August 4, 1980 is affirmed.
The material facts underlying this criminal proceeding are not in dispute. In the early evening of October 16,1979, defendant Garthaffner, while standing with several other individuals on Sixth Avenue between 13th and 14th Streets, in Manhattan, was approached by undercover *94 Police Officer. Ronald Strip. After Officer Strip asked defendant whether he had any “Tuinals” (the vernacular description of a certain controlled substance containing barbiturates), defendant “removed a vial from his pocket and took out two ‘Tuinals’ ”, which he proceeded to sell to the officer for “four dollars apiece”. Thereupon, defendant was arrested, and a lawful search revealed that the vial containing the two capsules sold to the office also contained some 36 additional barbiturate pills. The People acknowledge that all of the pills in question were legally manufactured, and obtained by defendant by means of a valid prescription.
Defendant was initially charged with the criminal sale of a controlled substance in the third degree (Penal Law, § 220.39). That charge subsequently was reduced to one of unlawful possession of a controlled substance in the seventh degree, a class A misdemeanor (Penal Law, § 220.03), based on two counts: (1) the sale of the two barbiturate capsules; and (2) the possession of the 36 additional pills.
At the bench trial, defendant relied on two main defenses: (1) entrapment; and (2) the existence of a valid prescription for the barbiturates. Trial Term, in a well-reasoned decision reported at 103 Misc 2d 671, properly rejected both of defendant’s tendered defenses and, while acquitting the defendant as to the count relating to the possession of the 36 capsules contained in the prescription vial, convicted him of unlawful possession of the two capsules sold to the undercover officer.
On appeal to this court, defendant, apparently abandoning the aforesaid defenses, asserts for the first time that his actions were punishable only under the Public Health Law, and not under the Penal Law, under which he was charged and ultimately convicted. In support of the argument that the Public Health Law constituted the exclusive prosecutorial vehicle herein, defendant cites the following sections of the Public Health Law:
“§ 3345. Possession of controlled substances by ultimate users original container
“Except for the purpose of current use by the person or animal for whom such substance was prescribed or dispensed, it shall be unlawful for an ultimate user of con *95 trolled substances to possess such substance outside of the original container in which it was dispensed.
“Violation of this provision shall be an offense punishable by a fine of not more than fifty dollars.”
“§ 3396. Violations; penalties * * *
“2. Violation of any provision of this article for which a penalty is specifically provided herein shall be punishable as provided herein. Violation of any provision of this article for which no penalty is provided herein shall be punishable as provided in section twelve-b of article one of this chapter or in the penal law.”
Defendant’s reliance on the above-quoted section is misplaced. As to the preliminary matter of the reviewability of defendant’s claim, it is true that defendant did not, at trial, challenge the appropriateness of the People’s use of section 220.03 of the Penal Law, even though the trial court itself broached the issue in its endeavor to clarify the basis of defendant’s dismissal motion made at the conclusion of the People’s case. Indeed defendant’s trial counsel himself proclaimed, during colloquy, that the Penal Law and the Public Health Law are “interchangeable to some degree”. Defendant’s claim that the People chose an improper prosecutorial mechanism is however so fundamental, that it may be raised for the first time on appeal (see CPL 470.15).
Reaching now the merits, the statutory scheme delineated in the Controlled Substances Act, section 3300 et seq. of the Public Health Law, is targeted essentially to the civil prosecution of noncriminal offenses. Theoretically, the District Attorney could, if so inclined, prosecute a violation of the Public Health Law and, in such event, exact a penalty limited by that law (e.g., a fine of not more than $50 for the unlawful possession of a controlled substance [Public Health Law, § 3345]). The existence of article 33 of the Public Health Law does not in any way, however, bar the District Attorney from enforcing the comparable criminal statute relating to narcotics enforcement, especially where, as here, the additional material elements which must be proven to sustain a criminal conviction, viz., “knowing and unlawful” possession of the *96 controlled substance, are present. Put another way, the mere fact that the defendant, in violating a provision of the Penal Law, also contravened a parallel provision embodied in another statute, does not mean that the People’s right to maintain a penal action was somehow abridged. Nor is section 3396 of the Public Health Law, upon which defendant places great reliance, to the contrary. This section was not intended to make any change in the penalty structure applicable to drug-related offenses (see Memorandum of Temporary State Commission to Evaluate the Drug Laws, NY Legis Ann, 1972, pp 181-182). Furthermore, were we to adopt defendant’s argument, we would, in effect, be holding that section 220.03 of the Penal Law serves no function at all and that the Legislature acted futilely by enacting and twice amending it subsequent to the passage of the Controlled Substances Act. We decline to so hold.
Having determined that defendant’s conduct was indeed punishable under section 220.03 of the Penal Law, we affirm the conviction, for the prosecution proved beyond a reasonable doubt, as it was required to do, “the presence of a controlled substance as statutorily defined, that it was physically or constructively possessed by the accused and that the possession was knowing and unlawful” (People v Sierra, 45 NY2d 56, 60).
Dudley, P. J., Hughes and Tierney, JJ., concur.